**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:11-cr-00442-GMN-GWF |
| vs. ) | |
| ) | **ORDER** |
| ERIC TYRONE JACKSON, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is Defendant Eric Tyrone Jackson's ("Defendant's") Motion for Compassionate Release ("MCR"), (ECF No. 408), and Amended Motion for Compassionate Release ("AMCR"), (ECF No. 411). The Government filed a Response to the AMCR, (ECF No. 418), to which Defendant filed a Reply, (ECF No. 426).

Also pending before the Court is Defendant's Motion to Produce Medical Records, (ECF No. 404); Defendant's Motion for Appointment of Counsel, (ECF No. 410); Defendant's Motion to Seal Exhibit Two to the AMCR, (ECF No. 413); the Government's Motion for Leave to File Sealed Exhibit, (ECF No. 419); Defendant's Motion to Attach Recent Filings, (ECF No. 421); Defendant's Motion to Extend Time, (ECF No. 427); Defendant's Motion for Leave to File a Sur-Reply, (ECF No. 430); and Defendant's Motion to Dismiss Counsel, (ECF No. 432).[1]

For the reasons discussed below, the Court **DENIES** Defendant's MCR and AMCR. Further, the Court **GRANTS** Defendant's Motion to Attach Recent Filings. The Court also **GRANTS** *nunc pro tunc* Defendant's Motion for Appointment of Counsel, Defendant's Motion to Seal Exhibit Two to Defendant's AMCR, Defendant's Motion to Extend Time, the

---

[1] Defendant additionally filed two supplements to his Reply to the AMCR. (*See* First Supplement, ECF No. 431); (*see also* Second Supplement, ECF No. 433).

Government's Motion for Leave to File Sealed Exhibit, and the Government's Motion for Leave to File a Sur-Reply.  Finally, the Court **DENIES as moot** Defendant's Motion to Produce Medical Records and Defendant's Motion to Dismiss Counsel.

## I. BACKGROUND

On November 5, 2012, Defendant pleaded guilty to two counts of the Superseding Indictment: (1) Count Three: Armed Bank Robbery in violation of 18 U.S.C. § 2113(a) and (d); and (2) Count Four: Possession of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (*See* Mins. Proceedings, ECF No. 68); (Superseding Indictment, ECF No. 45).  The Court sentenced Defendant to 20-months custody, as to Count Three; and 84-months custody, as to Count Four, to be served consecutively. (*See* Mins. Proceedings, ECF No. 98); (J., ECF No. 100).  Defendant is presently in custody at Federal Correctional Institution, Otisville ("FCI Otisville"). (*See* AMCR 2:19–20, ECF No. 411).

On September 13, 2021, Defendant filed an MCR, requesting early release given his asthma, chronic lung disorder, and vitamin D deficiency. (*See generally* MCR, ECF No. 408). He later filed an AMCR with the assistance of counsel. (*See generally* AMCR).  The Court addresses Defendant's Motion for Compassionate Release and Amended Motion for Compassionate Release below.

## II. LEGAL STANDARD

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), authorizes the sentencing court to modify a term of imprisonment in limited circumstances, upon a motion by the defendant. 18 U.S.C. § 3582(c)(1)(A).  The sentencing court may order compassionate release, "if after considering the factors set forth in 18 U.S.C. § 3553(a)," the defendant has demonstrated: (1) he has exhausted his administrative remedies; and (2) "extraordinary and compelling reasons" warrant a reduction in her sentence. *Id.*  The Court must also consider

whether a reduction in sentence is consistent with applicable policy statements issued by the United States Sentencing Commission. *Id.* While there is currently no applicable policy statement for § 3582(c)(1)(A) motions filed by a defendant, "[t]he Sentencing Commission's statements in U.S.S.G § 1B1.13," which apply to § 3582(c)(1)(A) motions filed by the Bureau of Prisons ("BOP"), "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).

### III. DISCUSSION

Defendant raises two principal arguments in support of his AMCR. First, Defendant asserts that the spread of COVID-19 at FCI Otisville, along with his underlying chronic lung disorder provide "extraordinary and compelling reasons" for his early release from custody. (AMCR 9:3–14:12). Second, Defendant argues that serving his sentence at FCI Otisville violates the Eighth Amendment because the facility's inability to protect him from COVID-19 amounts to cruel and unusual punishment. (*Id*. 16:15–18:14). The Court addresses each argument in turn.

**A. Sentence Reduction under 18 U.S.C. § 3582**

As a preliminary matter, the parties do not dispute that Defendant properly exhausted his administrative remedies. (AMCR 5:12–19); (Resp. to AMCR 1:18, ECF No. 418). The Court will thus limit its discussion to an analysis of whether Defendant has presented extraordinary and compelling reasons for release.

Defendant maintains that the COVID-19 pandemic presents extraordinary and compelling reasons for his release because of his "asthma/lung disorder diagnosis." (AMCR 14:6–8). In response, the Government argues Defendant is unable to provide extraordinary and compelling reasons for early release because he is vaccinated. (Resp. to AMCR 7:14–18). Defendant also avers, however, in the alternative: if the Court does not order early release and a

reduction in sentence, the Court should allow him to serve a portion of his remaining sentence under home confinement. (AMCR 14:13–16:14).

Extraordinary and compelling reasons for compassionate release may exist when a defendant demonstrates he is suffering from a severe medical condition. *See* U.S.S.G. § 1B1.13.  When considering "extraordinary and compelling reasons" for release based on a medical condition in light of the COVID-19 pandemic, courts have looked to the safety of the defendant's current detention institution compared to release, as well as whether the defendant's medical conditions elevate the risk of severe illness from COVID-19. *See, e.g., United States v. Kauwe*, 467 F. Supp. 3d 940, 2020 WL 2926460, at *2 (D. Nev. 2020); *United States v. Walters*, No. 2:16-CR-00011-JAD-PAL, 2020 WL 3104049, at *2 (D. Nev. June 11, 2020); *United States v. Delgado*, No. 3:18-CR-17-(VAB)-1, 457 F. Supp. 3d 85, 2020 WL 2464685, at *6 (D. Conn. Apr. 30, 2020).

Given the efficacy of COVID-19 vaccines, courts have routinely denied compassionate release, in part, because a defendant is vaccinated. *United States v. Thompson*, No. 2:16-cr-00230-GMN-DJA-1, 2021 WL 2324498, at *2 (D. Nev. June 7, 2021)*; see also United States v. Young*, No. 3:08-cr-00120-LRH-VPC, 2021 WL 4899159, at *2 (D. Nev. Oct. 20, 2021) (finding extraordinary and compelling reasons do not exist for compassionate release because of COVID-19 vaccine efficacy).  Courts have similarly denied compassionate release in cases where a defendant lives with chronic medical conditions, including asthma. *See United States v. Grummer*, 519 F. Supp. 3d 760, 761, 763 (S.D. Cal. 2021) ("Although Defendant suffers from [chronic heart disease, hypertension, and asthma,] his vaccination significantly mitigates the risk that he will contract COVID-19."); *United States v. Boice*, No. 3:18-cr-00028-LRH-WGC, 2021 WL 2270668, at *2 (D. Nev. June 3, 2021) (denying compassionate release because being vaccinated against COVID-19 mitigated the risk of becoming severely ill from the coronavirus

disease despite suffering from hypertension, BMI, high blood pressure, and chronic kidney disease).²

Here, Defendant fails to demonstrate that his chronic health conditions constitute extraordinary and compelling reasons because he is inoculated against COVID-19. (MCR at 1); (AMCR 14:6–8). Defendant received his Johnson and Johnson ("J&J") vaccination on June 15, 2021. (Sealed BOP Immunizations, Ex. 1 to Resp. to AMCR, ECF No. 420). The Centers for Disease Control and Prevention have advised that the J&J vaccine effectively protects individuals against serious health outcomes from the coronavirus. *Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety* (Oct. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html. Defendant, thus, fails to demonstrate extraordinary and compelling reasons warranting early release.

Further, evidence before the Court belies Defendant's assertion that the prevalence of COVID-19 at FCI Otisville further supports early release. (*See* AMCR 9:3–13:12). Defendant asserts the prevalence of COVID-19 and the BOP's failure to take basic precautions present additional extraordinary and compelling reasons for early release. (*Id.* 10:5–11:8). However, as

---

² Defendant also argues in his Second Supplement to his Reply ("Second Supplement") that extraordinary and compelling reasons for release exist because (1) the J&J vaccine has a lower efficacy rate than the Pfizer and Moderna vaccines, (2) the CDC recommends that individuals like Defendant receive an early booster shot, and (3) he may not receive his booster shot within six months of receiving his original dose. (Second Suppl. 3:1–18, ECF No. 433). Defendant, however, provides scant authority to support his assertions. First, according to the CDC, all approved COVID-19 vaccines decrease the severity of illness in people who contract the coronavirus disease. *When You've Been Fully Vaccinated* (Oct. 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html. Second, the BOP announced that it would offer booster shots to most immunosuppressed inmates at least 28 days after being fully vaccinated. *See* FEDERAL BUREAU OF PRISONS, COVID-19 VACCINE GUIDANCE 5–6 (14.1st ed. 2021), https://www.bop.gov/resources/pdfs/covid_19_vaccine_guidance_v14_0_2021.pdf ("The BOP will offer the Pfizer-BioNTech COVID-19 booster vaccine to all inmates (minus those who already received a 3rd dose given their immunosuppressed state)."); *United States v. Rand*, No. 3:16-cr-00029-MMD-WGC-1, 2021 WL 4394782, at *1 (D. Nev. Sep. 24, 2021) (stating in passing that COVID-19 vaccines were available in a BOP facility as early as December 30, 2020). This suggests the BOP will be able to continue providing the necessary care to protect inmates against COVID-19. As such, the Court finds the claims in his Second Supplement do not show extraordinary and compelling reasons for release.

of November 12, 2021, FCI Otisville reported one confirmed COVID-19 case and zero deaths. *See* COVID-19 Coronavirus, https://www.bop.gov/coronavirus/index.jsp (last visited Nov. 12, 2021).[3] Defendant's medical records additionally show FCI Otisville has provided him with necessary care, including medically assessing him on September 1, 2021, ordering multiple mometasone furoate inhaler doses and an albuterol inhaler to treat his asthma, and cholecalciferol to treat his vitamin D deficiency. (*See* MCR at 14 of 30), (Sealed Med. R. at 27, Ex. 2 to AMCR, ECF No. 412); (MCR at 4 of 30).  Taken together, the evidence does not support Defendant's argument.

Finally, the Court denies Defendant's alternative request for transfer to home confinement.  Defendant specifically requests that the Court allow him to serve the remaining portion of his sentence in home confinement because of the COVID-19 pandemic. (AMCR 2:14–18).  The Court may make a placement recommendation to the BOP, but it is within the BOP's discretion to follow the recommendation. *See* 18 U.S.C. § 3621(b) (delegating authority to the BOP to choose a defendant's place of imprisonment after considering the sentencing court's location of confinement recommendation); *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (*per curiam*).  Here, the Court declines to recommend home confinement because Defendant's health has not severely deteriorated nor is he severely vulnerable to COVID-19 because of his J&J vaccine. *Cf. United States v. Williams*, No. 2:14-cr-00321-GMN-NJK-3, 2021 WL 149832, at *2–4 (D. Nev. Jan. 14, 2021) (recommending home confinement because the defendant suffered from asthma, heart disease, obesity, hypertension, hyperthyroidism, and diabetes); *United States v. Prince*, No. 2:16-cr-00225-GMN-NJK-2, 2020

---

[3] Defendant notified the Court that he will be transferring from FCI Otisville in the future and requested the Court to consider the new facility's COVID-19 case rates. (*See generally* Notice Regarding Upcoming Prison Transfer, ECF No. 434).  However, Defendant does not specify the location of his next transfer. (*See id.*).  As such, the Court cannot compare positive COVID-19 rates between FCI Otisville and Defendant's next facility, or any interim facility.

WL 7714704, at *2 (D. Nev. Dec. 28, 2020), *appeal dismissed*, No. 21-10009, 2021 WL 2835487 (9th Cir. Apr. 15, 2021) (recommending home confinement because the defendant became confined to a wheelchair, suffered from severe cataracts, was partially oxygen dependent, and endured three strokes resulting in temporary paralysis of his left side, difficulty speaking, and mental fogging). Defendant has neither shown that his physical condition has severely deteriorated nor that he is severely vulnerable to the coronavirus disease despite being inoculated against it.[4] Accordingly, the Court denies compassionate release and home confinement.[5]

### B. Eighth Amendment Prohibition of Cruel and Unusual Punishment

Defendant additionally argues that serving his sentence at FCI Otisville violates the Eighth Amendment because the facility is unable to adequately protect him from contracting COVID-19. (AMCR 18:10–14). Specifically, Defendant analogizes the current COVID-19 pandemic to the environmental threats in *Helling v. McKinney*, 509 U.S. 25 (1993)—a case in which the Supreme Court held that exposure to environmental threats could constitute an Eighth Amendment violation. (*Id*. 16:15–18:14).

In general, "petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Hernandez v. Campbell*, 204 F.3d 861, 864–65 (9th Cir. 2000). Though compassionate release motions are properly raised in the sentencing court, habeas petitions under 28 U.S.C. § 2241 must be brought in the

---

[4] Defendant also argues for early release, or alternatively home confinement, because FCI Otisville cannot provide necessary medical care for his health conditions. (*See* AMCR 2:24–3:4). However, as stated above, FCI Otisville recently assessed him and have provided Defendant with various treatments for his asthma and vitamin D deficiency. (*See* Sealed Med. Records at 14, Ex. 6 to MCR), (Sealed Med. Records at 27, Ex. 2 to AMCR, ECF No. 412); (Sealed Med. Records at 4, Ex. 1 to MCR). As such, the Court finds Defendant's argument unpersuasive.

[5] Given that the Court does not find any extraordinary and compelling reasons for early release, the Court does not consider the remaining 18 U.S.C. § 3553(a) sentencing factors. *See* 18 U.S.C. § 3582(c)(1)(A).

district court where the defendant is confined. *See id.* at 865; *see also United States v. Tafoya-Ramos*, No. 1:15-cr-0288-AWI-SKO-6, 2020 WL 7425341, at *5 (E.D. Cal. Dec. 18, 2020).

Here, the Court cannot consider Defendant's Eighth Amendment violation claim because the Court does not have jurisdiction over it. Defendant's Eighth Amendment claim—namely, FCI Otisville's inability to protect Defendant from COVID-19—relates to the manner and conditions of confinement, which is more appropriately brought as a habeas petition under 18 U.S.C. § 2241. *See Tafoya-Ramos*, 2020 WL 7425341, at *4 (interpreting a defendant's Eighth Amendment violation claim to justify compassionate release as a habeas petition under § 2241). Broadly construing Defendant's Eighth Amendment claim as a habeas petition under § 2241, the Court cannot hear this claim because it is not the court of confinement. (*See* AMCR 2:9, 2:19–20) (indicating that Defendant resides in FCI Otisville, located in Otisville, New York). To the extent that Defendant intends to seek release under § 2241, he must do so in the United States District Court for the Southern District of New York, the district in which FCI Otisville is located. Defendant's Amended Motion for Compassionate Release is accordingly denied.

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion for Compassionate Release, (ECF No. 408), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Amended Motion for Compassionate Release, (ECF No. 411), is **DENIED**.

**IT IS HEREBY ORDERED** that Defendant's Motion to Produce Medical Records, (ECF No. 404), is **DENIED as moot**.[6]

---

[6] Given that the Court has obtained copies of Defendant's medical records, the Court denies as moot Defendant's Motion to Produce Medical Records.

**IT IS FURTHER ORDERED** that Defendant's Motion for Appointment of Counsel, (ECF No. 410), is **GRANTED** *nunc pro tunc*.**IT IS FURTHER ORDERED** that Defendant's Motion to Seal Exhibit Two to Defendant's Amended Motion for Compassionate Release, (ECF No. 413), is **GRANTED** *nunc pro tunc*.[7]

**IT IS FURTHER ORDERED** that the Government's Motion for Leave to File Sealed Exhibit, (ECF No. 419), is **GRANTED** *nunc pro tunc*.[8]

**IT IS FURTHER ORDERED** that Defendant's Motion to Attach Recent Filings, (ECF No. 421), is **GRANTED**.[9]

**IT IS FURTHER ORDERED** that Defendant's Motion to Extend Time, (ECF No. 427), is **GRANTED** *nunc pro tunc*.

**IT IS FURTHER ORDERED** that the Government's Motion for Leave to File a Sur-Reply, (ECF No. 430), is **GRANTED** *nunc pro tunc*.[10]

---

[7] The Exhibit contains Defendant's confidential medical records. Accordingly, the Court finds good cause to seal the record. *See, e.g.*, *Johnson v. Tambe*, No. 19-141-TSZ-MLP, 2019 WL 4014256, at *2 (W.D. Wash. Aug. 26, 2019) (finding the plaintiff's "privacy interest in his own medical records to be a sufficiently compelling reason to seal the medical records themselves").

[8] This Exhibit also contains Defendant's confidential medical records. Thus, the Court finds good cause to seal the record.

[9] Defendant requests the Court to attach his recent filings to the AMCR. (*See* Mot. to Attach Recent Filings, (ECF No. 421). The Court has considered all the motions and underlying documentation in its above analysis.

[10] The Government seeks leave to file a Sur-Reply to address Defendant's new argument in his Reply that the Government has taken inconsistent positions regarding vaccinations. For good cause appearing, the Court grants the Government's Motion for Leave to File a Sur-Reply. *See Allen v. Campbell*, No. 4:20-CV-00218-DCN, 2020 WL 6876198, at *7 (D. Idaho Nov. 23, 2020) (explaining that this Court may grant a motion to file a Sur-Reply "where a valid reason for such additional briefing exists, such as the movant rais[ing] new arguments in its reply brief." (internal quotations omitted)).

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Counsel, (ECF No. 432), is **DENIED as moot**.[11]

**DATED** this __16__ day of November, 2021.

_____
Gloria M. Navarro, District Judge
United States District Court

---

[11] Defendant seeks to dismiss Ms. Lisa Rasmussen as his appointed counsel because of alleged lack of communication between himself and Ms. Rasmussen. (*See* Mot. Dismiss Counsel at 1, ECF No. 432). Given that the Court has not yet appointed Ms. Rasmussen as counsel, there is no counsel to dismiss at this stage of the proceedings. Accordingly, the Court denies as moot Defendant's Motion to Dismiss Counsel.